UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN MORR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:08CV359 RWS |
| | ) |
| STATE OF MISSOURI | ) |
| DEPARTMENT OF | ) |
| MENTAL HEALTH, et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Carolyn Morr was an accounting clerk with the Missouri Department of Mental Health (DMH) until she was terminated on November 22, 2006. The court construes Morr's complaint to bring a Title VII retaliation claim, an age discrimination claim under the ADEA, a disability discrimination claim under the ADA, a failure to accommodate claim under the ADA, a retaliation claim under the ADA, a Family Medical Leave Act claim, and state law discrimination claims under the Missouri Human Rights Act.

Defendants move for summary judgment on all of Morr's claims. Genuine disputes of material fact preclude summary judgment on Morr's ADA claims for prospective injunctive relief against defendant Javois in his official capacity and her state law discrimination claims. However, I find that defendants are entitled to summary judgment on Morr's Title VII, ADEA, and

Family Medical Leave Act claims, and on her claims for monetary damages under the ADA. My analysis follows.

## Standards Governing Summary Judgment

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249. Finally, in making this determination, I must be mindful of the Eighth Circuit's admonition that "summary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211

F.3d 1097, 1099 (8th Cir. 2000). Under these standards, I review the facts of this case.[1]

**Facts**

At the time of her termination, Morr worked as an accounting clerk at the Metropolitan St. Louis Psychiatric Center. Morr started working for DMH in 2001 and was transferred to the St. Louis Psychiatric Center in 2003.

Morr has hearing loss which requires her to wear a hearing aid. In her opposition to summary judgment, Morr also argues that she was "regarded as having a psychological disturbance consisting of anger management" for which her supervisors required to take administrative leave and attend employee assistance program counseling. Morr further contends that her neck was injured in a car accident which caused her migraine headaches and problems with writing, lifting, and key entry. Morr had surgery for her neck in April of 2006 and scheduled time off work for the surgery, but complains that she was harassed because her doctor also required her to take the week off before surgery due to the stress of her work environment. Morr alleges that she was placed on employee assistance counseling immediately upon her return to work in retaliation for her surgery.

---

[1] I am finding these facts for purposes of this motion only, and this Memorandum and Order cannot be used for any purpose at trial and does not relieve any party from proving all facts necessary to sustain any claims and/or defenses at trial.

Morr states that she communicated her disabilities to her supervisors, including her hearing loss and problems with her neck, both verbally and in writing. Morr contends that she requested a phone with a visible display and adjustable volume control to accommodate her hearing loss. Morr eventually received the requested phone, but she alleges that it was apparently available before it was provided to her and that it was begrudgingly provided to her only after she inquired about her request. Morr also claims she needed an electric stapler because she had problems with the use of her right hand following her surgery. Morr provided a doctor's note for the electric stapler, and she admits that her supervisor immediately approved the request. However, Morr had to wait four months for the stapler, and one of her supervisors eventually took an electric stapler from another employee and angrily provided it to her. Morr also alleges that she was told by a supervisor in January of 2006 that she does not know how to use her hearing aid, that she is constantly turning them up and down all day, and that Morr does not know what is loud and what is not loud, which Morr found offensive.

Morr alleges that she complained to her supervisors about the responses to her request for accommodation of her disabilities and time off work. Morr also states that she complained that she was treated less favorably than "able-bodied employees." According to Morr, she was written up for using profane language (which she claims was untrue) and required to go to employee counseling, but

her co-workers repeatedly used foul language and were never disciplined. Morr also claims that she was harassed for making occasional, brief personal telephone calls on her cell phone while at work, but her co-workers were never disciplined for making personal, long-distance phone calls on company phones on a daily basis.
Morr also alleges that her work duties were "unfairly limited," and that she applied for promotions and transfers but that her requests were ignored.

Morr alleges that she was unfairly disciplined for telling a patient/part-time employee that she was performing well, while her co-workers were not disciplined for workplace activities Morr considered inappropriate, such as yelling at people, discussing patients, grooming, cooking on a portable grill, and taking extended lunch breaks.

Morr received verbal counseling in December of 2005 because her supervisor overheard Morr berating her in the presence of a client worker. In late December and early January of 2006, Morr received a written reprimand for talking about co-workers and supervisors in an area where they could overhear what she was saying about them, and for inappropriate language when she displays anger toward others. According to Morr, she fell and hit her head in January of 2006 during an office move. No one witnessed her fall. Morr went to her supervisor and told her that she had fallen, that she was going outside for some air, and that she "was tired of this fucking shit." Before Morr's supervisor

could respond, Morr went outside and was eventually escorted to the employee health unit by another employee. At the health unit, Morr was advised to go to the emergency room. She was taken to St. Mary's Hospital for emergency treatment by one of her co-workers, but she decided to see her own doctor instead. Morr's doctor diagnosed Morr with a neck sprain and said that she could return to work immediately.

On January 14, 2006, Morr reported to the building security guard that someone had tried to run her down. She told security that she did not see the driver, but she provided the guard with a license plate number. The driver turned out to be one of Morr's co-workers, who denied that she tried to run over Morr. Morr complains that her report was not treated seriously.

Morr was given a Notice of Unacceptable Conduct in July of 2006 because in March of 2006, her supervisor told her that squeezing a toy duck that made a quacking sound whenever people are speaking loudly near her desk was offensive, and in response Morr yelled in a disrespectful tone, "I find you offensive." In response to this behavior, Morr was required to attend counseling sessions through the Employee Assistance Program. Morr claims that another co-worker squeezed a toy that made a sound "sometimes every five minutes" and was not disciplined.

Morr was placed on "leave with pay" status in August of 2006 after she called police to her office complaining that she had been assaulted by co-

workers. However, after the police arrived Morr told them that she has been harassed, not assaulted, by her co-workers. The police left without any charges being filed or anyone being arrested. Morr's supervisor told her to leave after the incident, and Morr began yelling at her supervisor and turned very red in the face.

In September of 2006, Morr complained that she was being harassed by in the workplace. In response, DMH brought in an outside investigator from Jefferson City to investigate Morr's complaints of harassment and retaliation. The investigator filed a written report stating that he could find no evidence that Morr had been harassed by her co-workers or supervisors.

Finally, Morr alleges that her attorney was not allowed to attend disciplinary hearings on her behalf, and that she was retaliated against for hiring an attorney. However, the only meeting held with Morr to discuss her grievance was attended by her attorney.

Morr was terminated by letter dated November 22, 2006. The letter states the following facts in support of her dismissal:

> On or about November 3, 2006, after a co-worker departed St. Louis Psychiatric Rehabilitation Center, you followed her home in your vehicle. You rode her bumper very closely and blew your horn many times. You continued to ride your co-worker's bumper and follow her closely. Once your co-worker signaled to turn left and got into another lane, you blew your horn again and sped on. This threatening and intimidating behavior is unacceptable on or off facility grounds.

On or about November 3, 2006, you were in the hallway and passed another co-worker. With no previous interaction with this co-worker, you began screaming, "stay away from me - do not talk to me - do not smile at me. I am tired of all the lies." This coworker noted that you appeared extremely angry, and she felt threatened that you were going to hit her.

On or about October 31, 2006, while on the St. Louis Psychiatric Rehabilitation Center parking lot, you stopped your vehicle and rolled down your window and yelled loudly to a co-worker, "You were very rude today." The employee had not previously been engaged in a conversation with you and proceeded to her car. This behavior is considered threatening and intimidating.

On or about September 15, 2006, you filed an employee grievance indicating that fellow coworkers were harassing you. There was a harassment investigation initiated, which indicated that no evidence was found to substantiate harassment by your co-workers. This behavior is considered disruptive of the working activities of other employees.

Morr claims that the allegation that she followed a co-worker home was fabricated, and that her supervisor had no police report to substantiate the allegation. Morr admits making that comment to her co-worker, but she contends that her comment was justified.

**ADA Claims**

Morr's Title I ADA claims against DMH are barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme

Court has long held that states enjoy immunity from lawsuits by their own citizens. See Hans v. Louisiana, 134 U.S. 1, 15 (1890); Klingler v. Director, Dept. of Revenue, State of Mo., 455 F.3d 888, 893 (8th Cir. 2006). The Supreme Court has also held that states and their agencies enjoy sovereign immunity from lawsuits seeking money damages that are filed pursuant to Title I of the ADA, which prohibits employment discrimination on the basis of disability.[2] Board of Trustees of Univ. Of Ala. v. Garrett, 531 U.S. 356, 360 (2001); Klingler, 455 F.3d at 893. Because the Department of Mental Health is a state agency, it is entitled to Eleventh Amendment immunity on Morr's ADA claims. See Grey v. Wilburn, 270 F.3d 607, 609 (8th Cir. 2001). Moreover, because Morr is presumed to sue defendant Laurent Javois in his official capacity only,[3] he is also entitled to Eleventh Amendment immunity from suit on Morr's claim for monetary damages under Title I of the ADA.

---

[2]Title II of the ADA, however, which deals with participation in and benefits of the services, programs or activities of a public entity, validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment. See United States v. Georgia, 546 U.S. 151 (2006).

[3]Because Morr does not specify the capacity in which she has sued defendant Laurent Javois, he is presumed to be sued in his official capacity only. Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). When a plaintiff names a government official in his individual capacity, the plaintiff is seeking to recover damages from a government body itself. Kentucky v. Graham, 473 U.S. 159, 165 (1985). An action for damages against a state official, in his or her official capacity, is tantamount to a suit against the state itself, and absent waiver or consent, is barred by the Eleventh Amendment.

The Eleventh Amendment, however, is not a bar to federal jurisdiction over an ADA suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law. See Gibson v. Arkansas Dept. of Correction, 265 F.3d 718, 720 (8th Cir. 2001). Because Morr seeks reinstatement, which constitutes prospective injunctive relief, her ADA claims against defendant Javois in his official capacity are not barred by the Eleventh Amendment.[4] See Hicks v. Arkansas Dept. of Health and Human Services, 2006 WL 2551367, *15 (E.D. Ark. Sept. 5, 2006) ("An action seeking the reinstatement of a state employee who was improperly terminated is an action for prospective relief and therefore is not barred by the Eleventh Amendment."). Although not clear from her complaint or her opposition to summary judgment, it appears that Morr is alleging both a reasonable accommodations claim and a disparate treatment claim. The ADA prohibits discrimination by a covered employer against a qualified individual with a

---

[4]It is unclear from Morr's complaint and her opposition to summary judgment whether she is attempting to state a claim for retaliation under Title IV of the ADA. Although she mentions Title VII in connection with her retaliation claim, Morr argues that she was retaliated against because she "requested accommodation" and complained that "able-bodied employees" were treated more favorably than she. To the extent Morr is attempting to allege that she was retaliated against under Title IV the ADA, I find that claim for damages is also barred by the Eleventh Amendment. See Demshki v. Monteith, 255 F.3d 986, 988-889 (9th Cir. 2001) ("There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful discrimination against the disabled," and "absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims."). Morr's ADA retaliation claim against defendant Javois in his official capacity for prospective injunctive relief is discussed below in connection with Morr's Title VII retaliation claim.

disability because of the disability. "An employer can discriminate by failing to make reasonable accommodation to the known limitations of an employee." Nuzum v. Ozark Automotive Distribs., Inc., 432 F.3d 839, 842 (8th Cir. 2005). If an employee requests an accommodation, the employer must engage in an interactive process to determine whether reasonable accommodations are possible. Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002). If such accommodations are possible, then the employer must reasonably accommodate that request, but need not provide the exact accommodation requested. Cravens v. Blue Cross & Blue Shield, 214 F.3d 1011, 1019 (8th Cir. 2000). To prove that an employer failed to participate in an interactive process regarding a reasonable accommodation, an employee must show the following: (1) that the employer knew she was disabled; (2) that she requested accommodations; (3) that the employer did not make a good faith effort to assist her in making accommodations; and (4) that the employer could have reasonably accommodated, but for its lack of good faith. Id. at 1021. "When an employer fails to engage in an interactive process, that is prima facie evidence of bad faith." Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 870 (8th Cir. 2008).

"If a party alleges a claim of discriminatory disparate treatment, then the traditional burden-shifting framework of McDonnell Douglas will apply . . . . However, if a party makes a reasonable accommodation claim, then we apply a

modified burden-shifting analysis." Fenney v. Dakota, Minnesota & Eastern R. Co., 327 F.3d 707, 711-712 (8th Cir. 2003). Under the modified burden-shifting approach, the employee must make a facial showing that she has an ADA disability and that she has suffered an adverse employment action. She must also make a facial showing that she is a "qualified individual." Id. at 712. Morr must prove that she is a "qualified individual" under the ADA.

> To be a qualified individual within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.

Brannon v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008)(quoting Fenney, 327 F.3d at 712). For disparate-treatment claims, "[w]e apply the familiar McDonnell Douglas burden-shifting framework in ADA cases." Kosmicki v. Burlington N. & Santa Fe Ry. Co., 545 F.3d 649, 651 (8th Cir. 2008); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under this framework, Morr first must make out a prima facie case by showing that she was disabled within the meaning of the ADA and qualified to perform the essential functions of her job and that she suffered an adverse employment action because of her disability. Willnerd v. First Nat. Nebraska, Inc., 558 F.3d 7702009 WL 635219, *5 (8th Cir. March 13, 2009). If Morr makes this showing, the burden of production shifts to defendants to articulate a legitimate, non-discriminatory reason for the adverse action. Id. If defendants meet this burden, the burden of

proof lies with Morr to discredit defendants' stated reasons for the alleged disparate treatment and to show circumstances raising a reasonable inference that the real reason for her discharge was her disability. Kosmicki, 545 F.3d at 651.

A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). Major life activities are those "that are of central importance to most people's lives." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002). These include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, thinking and concentrating. See Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (citing 29 C.F.R. § 1630.2(I) (2006)); Battle v. United Parcel Serv., Inc., 438 F.3d 856, 861 (8th Cir. 2006) (citations omitted).

For purposes of this motion only I will assume that Morr can make out her prima facie case under the ADA. On Morr's disparate treatment claim, the burden then shifts to defendants to articulate a legitimate, non-discriminatory reason for the alleged disparate treatment. Defendants have discharged their burden because they contend Morr was disciplined for her workplace conduct, described at length above, and was later terminated for the reasons set out in her letter of dismissal. The burden then shifts back to Morr to discredit defendants' stated reasons for disciplining and terminating her and to show circumstances raising a reasonable inference that the real reason for the adverse actions was her

disability. Kosmicki, 545 F.3d at 651. To demonstrate pretext, Morr contends that her co-workers, supervisors, and human resources personnel routinely criticized and ridiculed her for shouting and disciplined her for speaking too loudly, that she was told by a supervisor that she does not know how to use her hearing aid, that she is constantly turning them up and down all day, and that she does not know what is loud and what is not loud. Morr also points to her testimony that she was disciplined for actions while her non-disabled co-workers were not disciplined for doing the same things (or worse), and that in one case she was disciplined many months after the alleged incident took place. Finally, Morr denies that the facts used to support her dismissal are true, and that defendants did not make a good-faith effort to investigate whether the facts were true before she was terminated. Defendants deny that any derogatory statements were made to or about Morr.

There is sufficient evidence in the record which, if proven at trial, demonstrates that the stated reasons for disciplining and terminating Morr are merely pretexts for disability discrimination. When the facts are viewed in the light most favorable to Morr, it is clear that genuine issues of material fact remain regarding whether the disciplinary actions taken against her and her termination were the result of disability-based animus. These issues should only be decided by a jury making important credibility determinations. For this

reason, I am denying summary judgment on Morr's disparate treatment claim under the ADA.

Genuine disputes of material fact also preclude summary judgment on Morr's reasonable accommodations claim. Morr testified that she informed her supervisors and others of her disabilities on numerous occasions, that she requested equipment to accommodate her disabilities, that her requests were ignored for an extended period of time, that when she inquired about the status of her requests that her supervisors angrily provided her with the equipment, but that she had to return some of the requested equipment because it was actually in use by another employee who also needed it. Defendants deny that they knew of her alleged disabilities, that she requested accommodations, or that they did not make a good faith effort to assist her. Resolution of this issue will turn on key credibility determinations that cannot be made at this stage of the proceedings. Accordingly, summary judgment on Morr's ADA claim will be denied in part for the reasons stated above.

**FMLA Claim**

Defendants are entitled to Eleventh Immunity from suit on Morr's Family and Medical Leave Act self-care claim,[5] Miles v. Bellfontaine Habilitation Center, 481 F.3d 1106, 11107 (8th Cir. 2007), so the motion for summary

---

[5]Morr seeks relief under the provisions of FMLA granting an employee a right to leave on account of the employee's own illness, which are known as the self-care provisions of the statute. See McKlintic v. 36th Judicial Circuit Court, 508 F.3d 875, 876-77 (8th Cir. 2007).

judgment on Morr's FMLA claim will be granted. See McKlintic v. 36th Judicial Circuit Court, 508 F.3d 875, 877 (8th Cir. 2007).

**Age Discrimination Claim**

In opposition to summary judgment, Morr concedes that she cannot prevail on her age discrimination claim, so defendants are entitled to summary judgment on that claim.

**Retaliation Claim**

Title VII prohibits employers from retaliating against employees for opposing any discrimination made unlawful by Title VII, or for making a charge or participating in any manner in an investigation or proceeding under Title VII. 42 U.S.C. § 2000e-3(a); Bogren v. Minnesota, 236 F.3d 399, 407-08 (8th Cir. 2000); Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999). Title VII makes it unlawful for an employer to discriminate against an employee based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-3(a). Discrimination against an individual with a disability is not actionable under Title VII. Id. For that reason, a claim of retaliation in connection with disability discrimination cannot be brought under Title VII. See Miles v. University of Arkansas System, 2008 WL 1781098, *4 (E.D. Ark. April 16, 2008). Thus, defendants are entitled to summary judgment on Morr's Title VII retaliation claim.[6]

---

[6]Defendant Javois is also entitled to summary judgment on this claim because he cannot be held personally liable under Title VII.

However, to the extent Morr is alleging an ADA retaliation claim, summary judgment must be denied. Plaintiff bears the burden of establishing a prima facie case of retaliation. Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007). To establish a prima facie case that she was retaliated against for complaining of discriminatory conduct, plaintiff must show that: 1) she engaged in protected activity; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) a causal connection exists between her protected activity and the adverse employment action. Id.; Thomas v. Corwin, 483 F.3d 516, 530 (8th Cir. 2007). "Evidence giving rise to an inference of retaliatory motive on the part of the employer is sufficient to establish the requisite causal link." Id. at 531.

Morr's termination letter included as a basis for her dismissal a charge that she complained about harassment and DMH decided her complaints were unfounded. However, the circumstances surrounding Morr's complaints, the investigation into her complaints, and the facts cited to support Morr's dismissal are hotly-contested issues at the crux of this case. When this evidence is viewed in the light most favorable to Morr and combined with the temporal proximity between the investigation and her dismissal and the other evidence discussed in connection with Morr's other ADA claims, a reasonable jury may well infer that Morr was retaliated against for her complaints of discrimination. Although DMH is free to make any decision it chooses regarding its personnel, even if

unwise or unfair, it cannot not impermissibly discriminate. <u>See</u>, <u>e.g.</u>, <u>McLaughlin</u>, 50 F.3d at 511-12 ("An employer has the right to assign work, to change an employee's duties, to refuse to assign a particular job, and to discharge - for good reason, bad reason, or no reason at all, absent intentional discrimination.") (internal citations and quotation marks omitted). Summary judgment must therefore be denied.

**State Law Claims**

Because I am denying summary judgment on some of Morr's federal claims and defendants have not demonstrated that they are entitled to judgment as a matter of law on Morr's state claims, I am denying defendants' motion for summary judgment on Morr's state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#13] is granted in part and denied in part as stated above.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of April, 2009.